IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR226 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| DAVIS LU, | ) | |
| | ) | SUPPLEMENTAL TRIAL BRIEF |
| Defendant. | ) | OF THE UNITED STATES |

The United States of America, by and through counsel, Carol M. Skutnik, Acting United States Attorney; Brian S. Deckert and Daniel J. Riedl, Assistant United States Attorneys; and Candina S. Heath, Senior Counsel, Department of Justice Computer Crime and Intellectual Property Section, files a supplemental Trial Brief.

In its July 15, 2024, Trial Brief (R. 47: Trial Brief, PageID 207-37), the government provided notice of its intent to offer non-law enforcement dual fact and opinion witness testimony. On July 22, 2024, prior to beginning voir dire, this Honorable Court addressed this notice and referenced a Seventh Circuit case involving both a cautionary instruction to the jury and a twenty-minute interlude between a law enforcement officer's fact and opinion testimony. See *United States v Garrett,* 757 F.3d 560, 569-570 (7th Cir. 2014) and *United States v Upton,* 512 F.3d 394, 400-403 (7th Cir. 2008). While referencing these Seventh Circuit decisions (discussed in more detail below), this Honorable Court cursorily suggested methods of bifurcation, to include a temporal delay between the fact and opinion testimony of a witness, even to the point of inserting another witness during the delay. However, the trial was continued before this Court set forth the procedure to conduct the direct and cross examinations of the non-law enforcement dual fact and opinion testimony witnesses.

Because of the intertwined nature of the fact and opinion testimony in this case, *Garrett-*style bifurcation here would cause more confusion than it would alleviate. In this supplemental brief, the government proposes, in an abundance of caution,[1] as follows: that (1) the fact testimony and the opinion testimony of its 'noticed' non-law enforcement witnesses should be integrated during each witness' examination (both direct and cross), (2) the examining attorney make a clear demarcation when eliciting an opinion, (3) this Court provide a cautionary instruction to the jurors at the first elicitation of an opinion from a witness, and (4) this Court instruct the jury at the conclusion of trial with the Sixth Circuit Pattern Jury Instructions 7.03 and 7.03A. These proposals will be explored later in this filing.

<u>Understanding the Testimony to be Elicited</u>

The government noticed four witnesses who are employees of the victim company that it expects will provide both fact and opinion evidence.[2] These employees worked as programmers, developers, and/or platform or cyber security architects. None were hired by the government to be a "testifying" expert witness. Each employee will describe his educational background, technical training, and job responsibilities with the victim company. One or more of the employees will testify about work-related interactions with the defendant, observations of the defendant's conduct at the company, and the observable reactions by the defendant to the victim company's realignment.

In addition, all four employees, relying on personal knowledge gained pursuant to their specific positions at the victim company, will testify about the disruptions to the company's

---

[1] The government submits that its proposal more than appeases the precautions proclaimed by the Sixth Circuit Court of Appeals.

[2] The government recognizes that the Sixth Circuit Court of Appeals in *United States v. Johnson*, 488 F.3d 690 (6th Cir. 2007), directed district courts to use the term "opinion" rather than "expert" in the presence of the jury, and not to certify before the jury that a witness is qualified as an expert. *Id.* at 698.

2

system and the steps taken, both to identify the causes of the disruptions and to remediate the disruptions. The factual description of the steps taken to identify and remediate the disruptions that the company was experiencing were made based upon each employee's technical knowledge, from education, training, and experience. The actions and conclusions of these four employees form the basis of the opinions to be elicited at trial.

The steps mentioned above were taken over days, weeks, and even months, dependent on the specific code being examined, and were interconnected with the factually-derived conclusions or "opinions" made by each testifying employee about what the code was, what the code did, what the code interacted with, on which server or device the code was located, which servers were impacted by the code, how the code was executed, who wrote or executed the code, etc. To make sense to the jury, testimony about *why* and *when* a step was taken and about the *results* of taking that step, must contemporaneously incorporate the facts with the decisions, conclusions, and opinions related to the step or steps. The opinions are inextricably intertwined with the facts. Thus, to coherently present the progression of the steps taken by the employees and for the jury to understand those steps, the facts and opinions must be elicited in sync.

<u>Distinguishable Factual and Legal Constructs</u>

The Seventh Circuit opinions referenced by this Court during the pretrial conference involved dual fact and opinion testimony of law enforcement officers (LEOs) and will be specifically discussed later in this section. Historically, most of the caselaw regarding a dual capacity witness involve LEOs. Not surprisingly, the Sixth Circuit Pattern Jury Instruction 7.03 Committee Commentary (current as of March 1, 2023) specifically suggests proceeding with caution when a LEO "testifies both as a fact witness and as an opinion witness." The Sixth Circuit Court of Appeals has repeatedly warned of three specific risks involving a dual capacity

3

LEO witness, namely that: the jury will (1) give "unmerited credibility" for the LEO's lay testimony, (2) be confused by the dual role, and (3) "unduly credit the opinion testimony of an investigating officer based on a perception that the expert was privy to facts about the defendant not presented at trial." *United States v. Rios*, 830 F.3d 403, 414 (6th Cir. 2016) (quoting *United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007) and *United States v. York*, 572 F.3d 415, 425 (7th Cir. 2009)).

Guidance is lacking regarding the elicitation of testimony from *non-LEO* dual capacity witnesses. The government first will focus on the guidance provided for presenting a dual capacity LEO witness. Then the government will demonstrate that this guidance and its rationale are incongruous with the *non-LEO* expert testimony the government anticipates introducing during the Lu trial.

Even when admitting both fact and opinion testimony from a LEO witness, the government asseverates that the Sixth Circuit Court of Appeals has "refuse[d] to adopt a *per se* prohibition." *United States v. Barron*, 940 F.3d 903, 920 (6th Cir. 2019) (quoting *United States v. Thomas*, 74 F.3d 676, 683 (6th Cir. 1996);[3] *United States v. Pritchett*, 749 F.3d 417, 430 (6th Cir. 2014) ("Our circuit does not categorically prohibit an officer from testifying as both a fact witness and an expert witness."). In fact, the Sixth Circuit recognizes "two primary ways to assure that the jury is properly informed of the dual roles: (1) by providing 'an adequate cautionary jury instruction,' *or* (2) 'clear demarcation between expert and fact witness roles.'" *Barron,* 940 F.3d at 920 (quoting *United States v. Young*, 847 F.3d 328, 342 (6th Cir. 2017) and *United States v. Lopez-Medina,* 461 F.3d 724, 743 (6th Cir. 2006)) (Emphasis added).

---

[3] *United States v. Thomas*, 74 F.3d 676 (6th Cir. 1996) was abrogated on other grounds by *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

The Sixth Circuit has repeatedly reinforced the disjunctive course of action, highlighted above, so long as the district courts give the proper cautionary jury instruction regarding dual fact and opinion witness testimony:

- *United States v. Lelon Campbell*, No. 23-3736, 2024 WL 4635426, *7 (6th Cir. Oct. 31, 2024) (While the court did not provide a limiting instruction contemporaneous with the LEO's testimony, it did provide an adequate cautionary instruction at the conclusion of the trial - Sixth Circuit Pattern Jury Instruction 7.03A);

- *United States v. Hall*, 20 F.4th 1085, 1103 (6th Cir. 2022) (no error when the court allowed the LEO to "oscillate between being an expert witness and a fact witness without a clear demarcation" since the court properly instructed regarding opinion testimony at the conclusion of the trial); and

- *United States v. Abegunde*, 841 Fed.App'x. 867, 877-878 (6th Cir. 2021) (Although "the court declined to communicate a specific demarcation, stating that an instruction during trial would not 'mean[ ] that much to the jury' and that 'it is hard to draw the line,'" any potential harm or confusion was cured by providing an adequate cautionary jury instruction).

Notwithstanding the above, some courts have chosen to temporally separate a LEO's testimony into first, a 'fact testimony phase' consisting of all of the investigative techniques employed during the investigation – gathering evidence via searches, surveillance, interviewing witnesses, undercover operations, dealing with cooperators, reviewing or analyzing the seized evidence, etc. – and second, an 'opinion testimony phase.' Dual capacity LEO testimony most often occurs when the government seeks to elicit testimony from an agent in a drug case regarding both the investigative facts and their training and experience related to drug traffickers.

In these situations, the credentials or qualifications required to support an opinion is very distinct from the credentials or qualifications required to testify about investigative facts. It makes sense and is not difficult to separate or demarcate the phases in cases involving dual LEO witnesses, so as to avoid jurors labeling a government-employed LEO as an expert during the fact testimony phase, and to prevent attributing "expert credibility" to the LEO's investigative actions. Demarcation in drug cases also may prevent juror confusion on how to weigh the opinion testimony and avoid the blur that may accompany believing that the LEO has 'inside information' from the investigation which would bolster the rendered opinion.

The circumstances of the instant case—presenting fact and opinion testimony from four *non*-LEO witnesses—is not analogous to the situations involving dual LEO fact and opinion testimony. During the Seventh Circuit *Garrett* trial, a LEO witness was called to the stand twice, first to testify to the facts of the investigation and second to proffer his opinion as to the typical characteristics, quantities, and prices of crack cocaine and the meaning of code words used by drug distributors. The district court in *Garrett* interrupted the fact phase and opinion phase by a 20-minute break. During the fact phase, the court precluded the government from eliciting any foundational background to support opinion testimony. After being recalled and proffering "expert witness" qualifying testimony, the court prefaced the LEO's offer of opinion testimony by giving the following limiting instruction to the jury:

> [Agent X] has already testified as a fact witness, he is now going to offer opinion evidence ..., and I have permitted him, based on what you've just heard, to offer such opinion evidence. I will instruct you later on the way you consider opinion testimony, in general.
> *Garrett*, 757 F.3d at 569

At the close of trial, the judge in the *Garrett* case included two separate instructions in the jury charge:

> You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge their testimony in the same way that you judge the testimony of any other witness. The fact that such a person has given an opinion does not mean you are required to accept it.
> *Id.*

> You have heard the testimony of [Agent X], who testified to both facts and opinions. Each of these types of testimony should be given the proper weight.
> As to the testimony to facts, consider the factors discussed earlier in these instructions ...
> As to the testimony on opinions, you do not have to accept [Agent X's] opinion. In deciding how much weight to give it, you should consider the witness's qualifications and how he reached his conclusions along with the other factors discussed in these instructions for weighing the credibility of witnesses.
> *Id.* at 570

The Seventh Circuit concluded that the district court did not abuse its discretion by permitting the LEO witness to testify as both a fact and opinion witness. *Id.* at 569.

The dual role testimony of the LEO witness in *Garrett* is very different from the instant case. The government provided notice of the probability of F.R.E. 702[4] expert testimony by four *non*-LEO witnesses. Each of the witnesses has technical and specialized knowledge due to their education, training, and experience. Rendering opinions (as discussed herein) based on their

---

[4] F.R.E. 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

7

personal observations[5] would assist the jurors to "understand the evidence" and resolve factual issues. F.R.E. 703. Unlike the dual capacity LEO witnesses discussed above, these four witnesses were neither government employees nor directed by the government to fulfill their job responsibilities, that being to locate, examine, and remediate the malware-induced disruptions of the victim company's system. The credentials that will need to be presented to the jury to support any opinion testimony proffered by the employees are identical to the credentials needed for them to testify about the factual "steps" they took to fulfill their highly technical daily job responsibilities. While the routine investigative steps taken by LEOs pursuant to their normal duty assignments can easily be separated from their specialized knowledge-based opinions, the steps taken by these four victim company employee witnesses are inextricably intertwined with their decisions, conclusions, and opinions.

<u>The Testimony Regarding the Facts and the Opinions Are Inseparable</u>

In the instant case, the four dual fact and opinion witnesses worked at the victim company, contemporaneous with the defendant's employment there. One or more of the witnesses will testify concerning their experiences working with the defendant, the defendant's actions, and the process by which code was developed and deployed at the victim company. Beyond their observations of what occurred at the victim company during disruptions, all four employees were tasked with identifying the cause and remediating the damage to the victim company's systems. The employees used their highly technical knowledge and experience to

---

[5] F.R.E. 702 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

8

identify the malicious code that caused the disruptions. As they identified and remediated the malicious code, they formed opinions which caused them to take additional actions. The four employees will not only testify about the nature of the malicious code, but also about the effects they observed from the code running on the victim company's systems. Their testimony will therefore be factual in nature but presenting the testimony in a logical narrative will necessarily involve the discussion of all the steps taken, the conclusions drawn, and actions taken based on their knowledge and experience.

There is no realistic procedure that could be employed to extricate the factual testimony of these witnesses from their opinions and conclusions. The witnesses will testify as to observed facts which led to conclusions and decisions about how to best proceed with identifying and thereafter remediating the problems. The testimony is so inexorably intertwined that a bifurcated process would result in more confusion than it alleviates. Assuming *arguendo* that the testimony could be bifurcated, each witness would need to repeat significant portions of his fact testimony, including his background and experience and the factual information that led to his conclusion or decision, for his opinion testimony to make sense. Such a bifurcated approach would not be prudent considering the court's time, the jurors' time, and the witnesses' time (especially for out-of-town witnesses). This non-narrative and repetitive format would be extremely confusing for the jurors to have to recall perhaps hours of testimony (depending on the witness) or rehear that testimony a second time for the opinion to make sense.

During the pretrial conference, the Court posited that the government could call a different witness (Witness B) during the temporal delay between the fact and opinion phase of the first witness' testimony (Witness A). Again, assuming *arguendo* that the testimony could be bifurcated, Witness A would testify to facts and step down from the witness stand. Then Witness

9

B would testify before the government recalled Witness A to the stand to proffer his opinions. However, if Witness B is also a dual fact and opinion witness, then Witness B's testimony also would need to be bifurcated, either through Witness A's return to the stand, or by calling Witness C. The jurors, hearing back-to-back fact phase testimony from Witness A and Witness B (and maybe Witness C), would be much more likely to confuse their facts by the time any of the witnesses returned to the stand to proffer opinions. Considering that four of the Government's intended eight witnesses are dual fact and opinion witnesses, attempting to create a temporal delay between fact testimony and opinion testimony for each of the dual witnesses in this manner could only cause extreme confusion for the jurors.

    Demarcation

    A qualified witness can testify both as a fact witness and an opinion witness, so long as the two types of testimony are clearly demarcated. Demarcation, for our purposes, means marking the transition from one focus to another. The Sixth Circuit case law embraces verbal demarcation for a situation such as this. Thus, the government proposes three methods by which this Court can effect such demarcation: first, expect the examining attorney to clearly demarcate when an opinion is elicited during the direct or cross examination; second, provide a cautionary instruction to the jurors at the first transition from fact to opinion for each witness during the direct or cross examination; and third, instruct the jury at the conclusion of trial with the Sixth Circuit Pattern Jury Instructions 7.03 and 7.03A.

    *Counsels' Roles*

    In addition to avoiding the use of the word expert in front of the jury, the examining attorney can spotlight the elicitation of an opinion. Examples include asking "do you have an opinion about x?" and following up with "what is that opinion?" The undersigned postulates that

that counsel for the government and the defense, as officers of the court, (1) will comply with Sixth Circuit precedent and not use the term expert in front of the jury, and (2) will properly demarcate the elicitation of an opinion by wording his or her question appropriately.

*Court's Role*

A district court possesses "reasonable authority" to control the mode and order of witnesses and the presentation of evidence at trial. F.R.E. 611. So long as the court gives the jurors "the tools for properly evaluating the opinions in [a witness'] testimony," the risks are minimized. *Pritchett*, 749 F.3d at 430. Such tools include providing instructions to the jury.

Demarcation can be accomplished through use of a limiting instruction, delivered at the time of the testimony and later, as part of the court's jury charge. *United States v. Smith*, 601 F.3d 530, 540 (6th Cir. 2010). As such, the government has requested the inclusion of both Sixth Circuit Pattern Jury Instruction 7.03 and 7.03A in the court's jury charge:

> 7.03 OPINION TESTIMONY
> (1) You have heard the testimony of [Name], who testified as an opinion witness.
> (2) You do not have to accept [Name]'s opinion. In deciding how much weight to give it, you should consider the witness's qualifications and how he reached his conclusions. Also consider the other factors discussed in these instructions for weighing the credibility of witnesses.
> (3) Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.
>
> 7.03A WITNESS TESTIFYING TO BOTH FACTS AND OPINIONS
> (1) You have heard the testimony of [Name], who testified to both facts and opinions. Each of these types of testimony should be given the proper weight.
> (2) As to the testimony on facts, consider the factors discussed earlier in these instructions for weighing the credibility of witnesses.
> (3) As to the testimony on opinions, you do not have to accept [Name]'s opinion. In deciding how much weight to give it, you should consider the witness's qualifications and how he reached his conclusions along with the other factors discussed in these instructions for weighing the credibility of witnesses.
> (4) Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

Conclusion

The potential risks associated with dual capacity witnesses are much less pronounced with non-LEO witnesses, as illustrated by the Government's proposed witnesses. First, since the fact testimony from the witnesses will involve their experience identifying and examining code and remediating malware, the technical fact testimony and opinion testimony require the same predicate/qualifying questions. Thus, there is no concern about "merit" spillage one way or the other. Next, the "dual role" confusion ascribed to a LEO witness is not prevalent in the instant case, and any preconceived confusion can be easily resolved with a contemporaneous limiting instruction and the appropriate instructions in the jury charge. The government's use of the term "dual" herein refers to the two types of testimony discussed: fact and opinion. In reality, each of the four designated witnesses had a singular "role"—as an employee simply doing his job. At a high level, their jobs necessitated making decisions, drawing conclusions, and reaching opinions as they engaged in the routine factual aspects of their jobs. Thus, their role as a testifying witness is similarly singular – they each wear the same "hat" whether testifying about facts or rendering an opinion. But the combination of the Court's instructions and the examining attorneys' heralding the extraction of an opinion from the witness should provide the jurors with the proper tools to segregate and appropriately evaluate fact testimony and opinion testimony. Finally, the risk that the jury would unduly credit the opinion testimony of any employee based on a perception that that employee was privy to facts about the defendant not presented at trial is far less than the risk associated with a LEO witness who has what jurors may believe to be the extensive investigative resources of the government.

In consideration of the above, the government respectfully requests that the court (1) permit the fact and opinion testimony of the four victim company witnesses noticed as experts be integrated during their examinations (and not temporally demarcated); (2) provide a

12

cautionary instruction to the jurors at the first elicitation of an opinion from a witness; and (3) instruct the jury at the conclusion of trial with the Sixth Circuit Pattern Jury Instructions 7.03 and 7.03A. While the government recognizes that its request exceeds the conventional practice addressed in the disjunctive opinions discussed above, the government believes that its request is prudent.

<div style="margin-left:3em">

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney


By: /s/ Brian S. Deckert
    Brian S. Deckert (OH: 0071220)
    Daniel J. Riedl (OH: 0076798)
    Assistant United States Attorneys
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3873/3669
    (216) 522-8355 (facsimile)
    Brian.Deckert@usdoj.gov
    Daniel.Riedl@usdoj.gov

By: /s/ Candina S. Heath
    Candina S. Heath (TX #09347450)
    Senior Counsel
    U.S. Department of Justice Criminal Division
    Computer Crime & Intellectual Property Section
    John C. Keeney Building, Suite 600
    Washington, DC 20530
    (202) 923-5211
    Email: Candina.Heath2@usdoj.gov

</div>