IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR00226 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| DAVIS LU, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION FOR RELEASE ON BAIL |
| | ) | PENDING SENTENCING |

Now comes the United States of America, by and through undersigned counsel, and hereby files this response in opposition to Defendant Davis Lu's Motion for Release on Bail Pending Sentencing. Because Defendant has failed to meet his burden of showing by clear and convincing evidence that he is not a risk of flight, his Motion should be denied.

## BACKGROUND

On April 1, 2021, the grand jury returned a one-count indictment (the "Indictment") against Davis Lu (hereinafter "Defendant"), a Chinese national and resident of Texas at the time of his arrest, charging a violation of the Computer Fraud and Abuse Act, that being Intentionally Damaging Protected Computer(s) (18 U.S.C. § 1030(a)(5)(A)). As summarized in the Indictment, which is incorporated by reference herein, Defendant was a software developer for the Eaton Corporation where he used his special skills and position to create and upload malicious code to company servers causing them to crash.

Defendant was arrested on April 14, 2021, in the Southern District of Texas on a warrant issued pursuant to the Indictment. Defendant appeared before a Magistrate Judge in the Southern District of Texas and was ordered to appear in the Northern District of Ohio. On May 4, 2021,

Defendant initially appeared in the Northern District of Ohio. The government did not move for detention and Defendant was released on the same conditions as those ordered by the Magistrate Judge in the Southern District of Texas.

This matter proceeded to trial on February 24, 2025. On March 7, 2025, the jury found Defendant guilty of the one-count Indictment and made special findings that he intentionally damaged 10 or more computers and caused at least $5,000 in damage in a one-year period. (R. 81: Verdict, PageID 818.) The government moved for detention under 18 U.S.C. § 3143 and this Court issued an order of detention.

Defendant requests that the Court release him on bail pending sentencing. (R. 83: Motion for Release, PageID 823-840). Defendant justifies this request by claiming that he is not a flight risk, does not pose a danger to the community, and that his release would allow him to better assist his appellate attorneys by having more access to discovery and allow easier communication with his attorneys. (*Id.*). Defendant offers several conditions he claims will ensure his appearance in the Northern District of Ohio.

## APPLICABLE LAW

While 18 U.S.C. § 3142 favors release pending trial, 18 U.S.C. § 3143 establishes a presumption of detention after a defendant is found guilty. Specifically, under § 3143(a)(1), a convicted defendant shall "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." This reflects a fundamental shift in the legal stance, where the establishment of guilt eliminates the presumption of release. *United States v. Vance*, 851 F.2d 166, 170 (6th Cir. 1988), *cert. denied*, 488 U.S. 893 (1990). "The burden rests with the defendant to prove by clear and convincing evidence that he does not pose a danger to the community and

that he is not likely to flee." *United States v. Abdulkadir*, 2024 U.S. Dist. LEXIS 34833, *2 (N.D. Ohio Feb. 29, 2024) (Lioi, J.) (citing *Vance*, 851 F.2d at 169). *See also United States v. Bolos*, 2022 U.S. App. LEXIS 10018 (6th Cir. Apr. 13, 2022). Defendant fails to meet this burden.

Pursuant to 18 U.S.C. § 3142(g)(1)-(4), the Court should evaluate Defendant's flight risk by assessing, as discussed below: the nature and circumstances of the charged offense, the weight of the evidence, Defendant's history and characteristics, and the potential danger his release poses to the community.[1]

## ARGUMENT

**The Nature and Circumstance of the Offense**

The first § 3142(g) factor considers "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a [sex trafficking offense], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." § 3142(g)(1). The offense Defendant committed is not among those specifically listed in § 3142(g). "However, this does not mean that this factor automatically leans in favor of pre-trial release." *United States v. Zhou*, No. 2:190CR-163(1) and (2), 2019 WL 6307194, at *4-5 (S.D. Ohio Nov. 19, 2019). Defendant stands convicted of an offense under the Computer Fraud and Abuse Act, specifically Intentionally Damaging Protected Computers. The charge carries significant potential criminal penalties, including a maximum period of 10 years of imprisonment, a $250,000 fine, and potential immigration consequences, such as deportation or removal from the United States. These significant criminal penalties provide great incentive for Defendant to flee the United States rather than report to the designated bureau of prisons

---

[1] The government is not relying on Defendant's danger to the community for detention under 18 U.S.C. § 3142(g)(4).

3

facility for a lengthy sentence of incarceration. The crime was highly sophisticated, took place over several weeks and involved repeated acts by Defendant to write, deploy, improve and run malicious computer code on his employer's network. The evidence presented at trial demonstrated that, while his coworkers were working feverishly to locate the source of the server crashes, Defendant was actively undermining their efforts by improving his malware and changing techniques to avoid getting caught. This malicious and deceitful conduct demonstrates that Defendant cannot be trusted to abide by terms of release.

Numerous courts in the Sixth Circuit and other circuits have recognized that defendants facing severe penalties with ties to foreign countries have a greater incentive to flee. *Zhou*, 2019WL 6307194 at *4-5 (finding that the nature and circumstances of the charges, which included wire fraud, weighed in favor of detention where defendant's alleged crimes "resulted in millions of dollars of losses" and, if convicted, would subject the defendant to an estimated sentencing Guideline range of 121-151 months imprisonment); *United States v. You*, No. 1:19-CR-14, 2019 WL 2426659, at *3 (E.D. Tenn. June 10, 2019) ("Defendant's lengthy sentence [on a potential Guideline calculation of 210 to 262 months' imprisonment] provides a motive to flee internationally") (collecting cases); *United States v. Ho*, No. 3:16-CR-46-TAV-HBG-1, 2016 WL 5875005, at *4 (E.D. Tenn. Oct. 7, 2016) (recognizing that defendants facing severe penalties have a greater incentive to flee) (collecting cases). The government estimates that Defendant will be sentenced at offense level 24 or 26. If he falls into Criminal History Category I,[2] his guideline range would be either 51-63 or 61-78 months. Based on the potential lengthy

---

[2] If Defendant is not Criminal History Category I, he would be ineligible for the two-level "zero point offender" reduction found at USSG §4C1.1, resulting in a significantly higher guideline range.

sentence Defendant would face if convicted, the nature and circumstances of the offenses charged here weigh in favor of detention.

Although detention should not rest solely on the prospect of a significant sentence, the disparity between attending a court appearance and facing prolonged imprisonment followed by potential deportation is a substantial material consideration. In light of Defendant's potential penalties, his complete lack of ties to the Northern District of Ohio, and the serious potential immigration ramifications, Defendant cannot meet his burden of showing by clear and convincing evidence he does not pose a risk of flight.

Defendant argues that his lack of flight while on pretrial release demonstrates that he is not now a flight risk. Although compliance with the conditions of pretrial release is some evidence that a defendant will appear as ordered, the specter of a lengthy prison sentence is "a powerful incentive to flee that did not exist pre-trial." *United States v. Londono-Villa*, 898 F.2d 328, 329 (2d Cir. 1990) (*per curiam*). Simply stated, the seriousness of the conduct for which he has been found guilty, with a significant sentence looming, provides great incentive for Defendant to flee, not only the district, but the country.

**History and Characteristics of Defendant**

This Court must next consider the history and characteristics of Defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). While this is Defendant's first criminal conviction, "courts have never required a prior criminal record before ordering detention." *United States v. Stone*, 608 F.3d 939, 950 (6th Cir. 2010). The jury's guilty verdict may trigger serious immigration consequences for

Defendant under 8 U.S.C. § 1227(a)(2)(A)(i) and (iii). Being convicted of a crime "involving moral turpitude"[3] or "convicted of an aggravated felony" renders the convicted defendant deportable. Defendant's conviction under 18 U.S.C. § 1030(a)(5)(A) may qualify as one or both, but such a determination is dependent upon an Immigration Judge's consideration and evaluation of the charge, Defendant's criminal conduct, the amount of financial loss or harm, and other related factors.

Defendant was born in Shanghai, China, and initially received an employment-based U.S. Permanent Resident Card in 2007. His Permanent Resident Card was renewed for a 10-year period on July 12, 2017, shortly before the commission of the instant offense. Defendant's application for naturalization was denied on April 27, 2020. Pursuant to 8 U.S.C. § 1101(a)(3), Defendant is an alien, in that he is not a citizen or national of the United States. Defendant admits he lacks ties to the Northern District of Ohio. (R. 83: Motion, PageID 831). In truth, Defendant has never had any ties to the Northern District of Ohio. During the time period of the conduct described in the indictment, Defendant resided in the Pittsburgh, Pennsylvania area and now resides in Houston, Texas. He argues that his current occupation, family, and residence in

---

[3] *Jordan v. De George*, 341 U.S. 223, 232, 71 S.Ct. 703, 95 L.Ed. 886 (1951) ("[C]rimes in which fraud was an ingredient have always been regarded as involving moral turpitude."). "The Sixth Circuit put forward a similar definition in a removal case, describing crimes of moral turpitude as '[c]rimes that involve deception or fraud,' *Yeremin* [*v. Holder*, 738 F.3d 708, 714 (6th Cir. 2013)]; see *United States v. Lopez*, 75 F.4th 1337, 1344 (11th Cir. 2023) ('Our precedents are instructive. Fraud offenses meet th[e] standard' of a crime involving moral turpitude.)" *Oboh v. United States*, -- F.Supp.3d---, 1015 WL 700803 *7 (E.D. Tenn March 5, 2025).

Texas provide substantial ties to the community and weigh against any risk of flight. These arguments are unpersuasive.

Defendant took the stand and testified in his own defense at trial. During that testimony, Defendant stated that the code he wrote was not malicious and that he did not intentionally damage Eaton's computers. By unanimously finding Defendant guilty of the offense beyond a reasonable doubt, the jury demonstrated that they did not believe Defendant's testimony. The fact that Defendant took an oath to tell the truth and then perjured himself to avoid punishment further demonstrates his lack of trustworthiness to follow rules and conditions set forth by this Court.

Defendant has been employed for the past five years in the same field within which he was employed at the time of the offense in this matter. Trial evidence indicated he worked in isolation, without forming personal connections with colleagues. There is no indication that this pattern has changed. Defendant has asserted in his offer to relocate to Ohio that his job may be completed remotely or that he is willing to forfeit it in order to relocate. The apparent ability of Defendant to relocate to another state at a moment's notice only reinforces the Government's position that he lacks ties to any U.S. community and is a flight risk.

Further, significant doubts exist regarding Defendant's continued employment. Since the trial, the Government has spoken with representatives from Defendant's current employer. For almost four years, he failed to tell his employer about his pending criminal charges. To attend his trial, Defendant requested leave from his employer and fabricated a story about needing to travel to China to care for his father who had fallen. It wasn't until his employer read news reports following Defendant's conviction that they learned that he wasn't in China caring for his ailing father. His lies about his whereabouts, his felony conviction and the likelihood of a substantial

prison sentence casts serious doubts on his job security. Loss of employment would further weaken his already tenuous ties to the United States.

Likewise, Defendant's familial ties do not weigh against detention. Defendant has a wife and adult daughter who are both United States citizens, however, Defendant also has a father and sister who reside in China. While he has not visited his family in China since 2018, he has not been permitted by this Court to travel to see them since 2021. Defendant is not a citizen of the United States and admitted that he "*could* flee" if he chose to. (*Id.*, PageID 830). This is of significant consideration. The lack of an extradition treaty with China, and China's likely refusal to extradite its citizens, means Defendant could find safe haven there. Furthermore, his family's ability to freely travel with or visit him in China, or elsewhere, diminishes if not eradicates the weight of his familial ties to the United States. This is reinforced by the fact that Defendant's Google searches which were admitted into evidence at trial showed Defendant researched job opportunities in China. Defendant's browser history also reflected searches of China's economy and comparing the same to that of the U.S. These searches give clear indications that Defendant has considered returning to and living in China.

**Weight of the Evidence**

This factor relates to the weight of a defendant's flight risk, not the weight of evidence of his guilt. *Stone*, 608 F.3d at 948; *see also United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011) ("[T]his factor goes to how convincing the government's arguments of … risk of flight are.") Defendant is a Chinese national who has no residence, family ties, or community ties in the Northern District of Ohio. Defendant's father and sister live in China. Defendant thus has the motive and opportunity to flee. Courts have found that this factor weighs in favor of detention where, like here, a defendant has strong ties to other

8

counties, minimal or no ties to the district or the United States and faces a lengthy sentence if convicted. *See, e.g., Ho*, 2016 WL 5875005 at *7. The weight of the evidence overwhelmingly points to Defendant being a flight risk, a risk Defendant has not successfully refuted with clear and convincing evidence.

**Nature and Seriousness of the Danger to any Person or the Community**

Since the Government does not currently assert that Defendant poses a danger to the community or others, this factor is not considered in the present detention decision, which is premised solely on risk of flight. *See, e.g., Ho*, 2016 WL 5875005, at *3 (declining to discuss this factor because it does not relate to risk of flight.)

**Inapplicability of 18 U.S.C. §3145(c)**

Finally, Defendant attempts to rely on the "exceptional reasons" standards as described in 18 U.S.C. §3145(c) to justify his release on bail. Section 3145(c) details that individuals who shall be ordered detained under §3143(a)(2) or (b)(2) and who meet the conditions of release set forth in §3143(a)(1) or (b)(1) may be ordered released, if it is clearly shown there are exceptional reasons why such person's detention would not be appropriate. This statute is not applicable to the matter at hand. Defendant was detained under §3143(a)(1), not (a)(2) or (b)(2) and therefore cannot seek relief for "exceptional reasons" under §3145(c).

**Defendant's Proposed Conditions of Release are Inadequate**

Defendant proposes several conditions of release including asking that his wife serve as a third-party custodian and an offer to relocate to the Northern District of Ohio. (R. 83: Motion, PageID 832). These proposals are inadequate in light of the serious flight risk present here. *See United States v. Sakhaei,* Case No. 1:23-MJ-01628 KWR, 2024 WL 36096, at *5 (D. New Mexico January 3, 2024) (finding that release to the third-party custody of defendant's brother-

9

in-law, who lives in Maryland, "is wholly inadequate in light of the serious flight risk" and noting that release to the proposed third-party custodian "would do nothing to prevent his flight.").

Defendant also states that he should be released to assist appellate counsel with his appeal. (R. 83: Motion, PageID 838). The standard for releasing a defendant pending appeal is found at 18 U.S.C. §3143(b). However, this statute only applies to a defendant "who has filed an appeal," which Defendant has not. Any appeal filed by Defendant would almost certainly not be filed until after he is sentenced, at which point he will likely be incarcerated. Further, any appeal would be based on the written record including the transcripts and exhibits presented at trial. Defendant has not yet hired an appellate attorney, and no transcripts have been ordered. Defendant has not sufficiently explained why he needs to meet regularly with as-yet-unretained appellate counsel in person to review as-yet-unordered transcripts in preparation for an appeal that will not be filed for several months.

## **CONCLUSION**

Defendant has little incentive to remain in the jurisdiction of this Court, numerous reasons to flee, and the financial means to flee and remain out of reach of the United States. He is a significant international flight risk and has failed to articulate any clear and convincing

reasons for this Honorable Court to release him on any conditions, outside of the inconvenience of incarceration. For the foregoing reasons, the Motion should be denied without a hearing.

        Respectfully submitted,

        CAROL M. SKUTNIK
        Acting United States Attorney

By:    /s/ Daniel J. Riedl_____
        Daniel J. Riedl (OH: 0076798)
        Brian S. Deckert (OH: 0071220)
        Assistant United States Attorneys
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3669/3873
        (216) 685-2378 (facsimile)
        Daniel.Riedl@usdoj.gov
        Brian.Deckert@usdoj.gov

By:    /s/ Candina S. Heath_____
        Candina S. Heath (TX #09347450)
        Senior Counsel
        U.S. Department of Justice Criminal Division
        Computer Crime & Intellectual Property Section
        John C. Keeney Building, Suite 600
        Washington, DC 20530
        (202) 923-5211
        Email: Candina.Heath2@usdoj.gov