IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:21-CR-00226 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| DAVIS LU, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon Defendant Davis Lu's ("Defendant" or "Lu") Motion for Release on Bail Pending Sentencing filed on March 12, 2025 ("Defendant's Motion"). (Doc. No. 83.) On March 14, 2025, the United States of America filed the Government's Response in Opposition to Defendant's Motion ("the Government's Response"). (Doc. No. 84.) For the reasons set forth below, Defendant's Motion is DENIED.

On March 7, 2025, a jury found Defendant guilty of Intentionally Damaging Protected Computer(s) in violation of 18 U.S.C. § 1030(a)(5)(A). The Government made an oral motion for detention pursuant to 18 U.S.C. § 3143, Defendant opposed it, but the Court ordered Defendant detained pending sentencing. Defendant's counsel requested that this Court allow Defendant to file a motion for release on bail pending sentencing, and the Court granted Defendant's Request. Defendant was ordered to file his motion by March 12, 2025 and the Government was ordered to file its response by March 14, 2025.

Title 18 U.S.C. § 3143 provides in relevant part that a convicted defendant "shall be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." "The burden rests

with the defendant to prove by clear and convincing evidence that he does not pose a danger to the community and that he is not likely to flee." *United States v. Abdulkadir*, 2024 U.S. Dist. LEXIS 34833, *2 (N.D. Ohio Feb. 29, 2024) (Lioi, J.) (citing *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988), *cert denied*, 488 U.S. 893 (1990).

Defendant asserts that he is not a danger to the community and the Government does not dispute this assertion.[1] Defendant argues that the factors that this Court must evaluate in determining whether he has overcome the presumption of detention by clear and convincing evidence weigh in favor of his release, while the Government argues that they weigh in favor of detention.[2] The Government asserts that Lu is likely to flee, and Defendant asserts that any concerns that he will flee are ameliorated by the proposed conditions of his release.

Defendant argues in relevant part that "there is nothing about the nature and circumstances of the offense indicating that Mr. Lu poses a risk of flight … if he were released on bail pending sentencing." (Doc. No. 83, PageID # 830.) Specifically, Defendant correctly submits that the crime of which he was convicted is not one enumerated in § 3142(g)(1) and notes that while he was on bond pending trial, Lu did not leave the United States or otherwise attempt to evade these proceedings,

---

[1] In footnote 1 of the Government's Response, the Government represents that it "is not relying on Defendant's danger to the community for detention under 18 U.S.C. § 3142(g)(4)." (Doc. No. 84, PageID # 843.) Indeed, the Government submits that the Court need not consider the factor of the nature and seriousness of the danger to any person or the community that would be posed by the person's release pursuant to § 3142(g)(4) because the Government's Response is "premised solely on risk of flight." (*Id.*, PageID # 849.)

[2] Pursuant to 18 U.S.C. § 3142(g) the relevant factors to be taken into account are: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a [sex trafficking offense], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;" "(2) the weight of the evidence against the person;" and "(3) the history and characteristics of Defendant, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."

2

including before or after the Indictment was returned in April of 2021. Also, according to Defendant, he has maintained employment with Oceaneering International for the last five and one-half years and has no criminal history apart from this case.

The Government acknowledges that the offense Defendant was convicted of is not among those specifically listed in § 3142(g)(1), but quotes from *United States v. Zhou*, 2019 WL 6307194, at *4-5 (S.D. Ohio Nov. 19, 2019) that "this does not mean that this factor automatically leans in favor of pre-trial release." (Doc. No. 84, PageID # 843.) The Government contends that Defendant faces significant penalties associated with the offense of which he has been convicted, i.e., a statutory maximum penalty of 10 years, a $250,000 fine, an estimated Guidelines Range of either 51-63 or 61-78 months of imprisonment depending upon whether Lu has zero criminal history points so as to be eligible for a two-level "zero point offender" reduction under U.S.S.G. § 4C1.1, and potential immigration consequences, such as deportation or removal from the United States. The Government also points out that the evidence at trial demonstrates that the crime Defendant was convicted of was "highly sophisticated, took place over several weeks and involved repeated acts by Defendant to write, deploy, improve and run malicious computer code on his employer's network," and that "while his coworkers were working feverishly to locate the source of the server crashes, Defendant was actively undermining their efforts by improving his malware and changing techniques to avoid getting caught." (*Id.*, PageID # 844.) According to the Government, Defendant's "malicious and deceitful conduct demonstrates that Defendant cannot be trusted to abide by terms of release." (*Id.*)

The Court finds that the nature and circumstances of the offense weigh in favor of detention pending sentencing. While Defendant is correct that he complied with all conditions of his bond during his pre-trial release, he had incentive to do so, i.e., maintaining employment with his new

3

employer in Texas and the family unit of his wife and daughter in the United States, with the hope of being found not guilty of the crime with which he was charged and then being able to continue living with his wife and working in the United States, close to his daughter. That incentive is gone. While the Guidelines Sentence Defendant faces is not the length of those the defendants faced in the cases cited by the Government, the Court agrees with the Government that the evidence at trial (and the fact that he lied to his current employer about the absence he took to appear for trial)[3] demonstrates that Defendant cannot be trusted to abide by his proposed conditions or terms of release.

      Indeed, having heard and seen the evidence during trial, to include the witnesses' testimonies, the Court agrees with the Government that the evidence adduced demonstrates that Defendant acted maliciously and deceitfully in committing the crime charged and in trying to undermine Eaton's attempts to find and locate the reasons for the server crashes – with several of Defendant's Eaton colleagues credibly testifying regarding expending hours upon hours trying to identify and solve the problem. Moreover, despite a stipulation by Defendant that his job title with Eaton changed on August 1, 2019, Lu testified that it did not change; he was always an IT specialist. The key point was that his job title – per the stipulation – no longer included the word "Architectture." The Court also focused on Defendant's demeanor/facial expressions during the cross-examination of him by the Government and saw what appeared to be a simmering anger in Lu. Moreover, despite being praised by the Eaton employees who testified that Lu was one of the best two developers of Enovia at Eaton, Lu would not even acknowledge that he was a good developer. Whether Lu so testified because he

---

[3] The Government represents that since the trial, it has spoken with representatives from Defendant's current employer, and was advised that for almost four years, Lu failed to tell his employer about his pending criminal charges. The Government further represents that Lu's current employer advised that, to attend his trial, Lu requested leave from his employer and fabricated a story about needing to travel to China to care for his father who had fallen ill. (Doc. No. 84, PageID # 847.)

was trying to demonstrate that he was not a good developer and therefore, could not have created and did not create the malware he was charged with unleashing on Eaton, or simply because he wanted to appear humble, the fact is that his testimony lacked credibility. Finally, the Court agrees with the Government that the evidence adduced at trial demonstrates that Lu's crime was highly sophisticated, in both planning and execution – indeed, it was calculated to cause maximum damages - and that Lu's attempted cover-up of it was equally highly sophisticated and calculating. Although the Government's theory of Lu's motive in committing the crime was shame, the Court interpreted the evidence to demonstrate that Lu's motivation was pride. Whether shame or pride was Lu's motivation to wreak havoc on his employer's computers, the Court believes that either shame or pride would be a motivator for Lu to utilize his skills to calculate a plan to attempt to flee, and then execute that plan, to avoid the shame, humiliation, or indignity or dishonor of being incarcerated.

As regards the weight of the evidence referenced in 18 U.S.C. § 3142(g), in relevant part Defendant correctly asserts that it pertains to the weight of the evidence of flight, not the evidence of the underlying offense, citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). Lu acknowledges the Government's assertions made in support of its oral motion for detention that he is not a United States citizen and *could* attempt to flee to China, but submits that the Government has offered no evidence suggesting that there is a reasonable possibility that he would do so; and also contends that any attempt to flee would be futile since Lu and all of his immediate family members, i.e., his wife and daughter, reside in the United States. Defendant asserts that "[i]n essence, Mr. Lu would not have anywhere to go." (Doc. No. 83, PageID # 830.)

However, according to the Government, Lu does have somewhere to go because his father and sister live in Shanghai, China, where Lu was born. According to Defendant, he has not had any

contact with his father and sister for several years and, citing to the Pretrial Report which he indicated was incorporated by express reference as Exhibit A, he last traveled outside the United States in or around 2018. (Doc. No. 83, PageID # 831, footnotes 4 and 5.)[4] Defendant fails to acknowledge, however, that according to the Government when he last traveled in 2018 it was to China to visit his family. And, importantly, a travel restriction was a condition imposed upon Lu when he was granted bond on May 4, 2021, after his arraignment in this case. And, although Lu could have violated this travel restriction bond condition before trial but did not do so, his incentive to flee arose once he was convicted at trial.

Defendant is a Chinese national who was granted an employment-based U.S. Permanent Resident Card in 2007 and it renewed on July 12, 2017, but his application for naturalization was denied on April 27, 2020. The Government is correct in arguing that Defendant has the opportunity to flee, and as the Court has already concluded, he has a motive to flee. Aside from his wife, a United States citizen, who is living in Texas and his daughter, who is also a United States citizen who Lu testified lives in the United States, Lu has no ties to the United States, and he has no ties to the Northern District of Ohio. And even though Lu has offered to obtain housing within the Northern District of Ohio pending sentencing,[5] Lu has the motivation and opportunity to flee whether he is in Ohio or Texas. And even if, as he claims, Lu does not possess a passport, that does not mean he could not find a way to leave the United States and make his way to China, which does not have an

---

[4] The Court has reviewed the docket and cannot locate the Pretrial Report prepared by the United States Probation Officer for the Southern District of Ohio, referenced in footnotes 4 and 5 of Defendant's Motion, and Defendant has not attached it to Defendant's Motion, or otherwise provided a copy of it to this Court.

[5] (Doc. No. 83, PageID # 826, footnote 1.)

extradition treaty with the United States. The weight of the evidence factor weighs in favor of detention pending sentencing.

As for the history and characteristics of Defendant, the Court recognizes and acknowledges that Lu was not on probation or parole at the time of the offense of which he has been convicted; according to Defendant's counsel Lu has no criminal history separate and apart from this case;[6] and Lu has complied with the terms and conditions of his bond throughout the proceedings in this case, including traveling to Ohio on multiple occasions as directed by the Court. Also, Defendant's counsel represents that Lu does not have any substance abuse or psychological issues, and the Court would add that the Government has not pointed to any such issues. Defendant submits that he and his wife are offering to pledge their residence as collateral to further ensure that Lu obeys all terms and conditions of release and appears at sentencing, but concedes that "[u]pon information and belief, [Lu and his wife] own the residence, which is not encumbered by any liens or mortgages." (Doc. No. 83, PageID # 826.)[7] Defendant submits that placing him on a term of electronic home confinement with the requirements that he report to an assigned pretrial service officer as directed and be prohibited from obtaining a passport or similar documentation that could be used to facilitate international travel, and designating his wife as a third-party custodian will alleviate any concerns the Court has about Lu's risk of flight.

The Court would note, however, that a monitor can be removed, Defendant can attempt to abscond in between reporting to a pretrial services officer, and an order from the Court can be

---

[6] The Government is not sure that Lu is a zero-criminal history point offender, but acknowledges that at most his Criminal History Category will be I.

[7] The Court finds it interesting that it is "upon information and belief" that this statement is made; one would think that Lu and his wife would know for a fact whether they own a residence not encumbered by any liens or mortgages.

7

disregarded. Finally, the Court finds it doubtful that Lu's wife would be able to prevent Lu from leaving the country if he decided to do so. As the evidence at trial demonstrated, Lu committed his crime while working from the home in Pittsburgh that he shared with his wife, who as revealed during the trial, has a job that would take her away from close monitoring of her husband's conduct and even whereabouts. Moreover, it is *conceivable* that Lu's wife may have known about his criminal conduct and was unable to prevent him from committing or convince him not to commit the crime; or presumably she did not know and therefore, could not have done anything to prevent him from committing his crime in secret.

As concerns the history and characteristics of Defendant, the Government argues that an Immigration Judge may find that the crime of which Lu has been convicted is one involving moral turpitude or an aggravated felony which would render Lu deportable. However, the Court notes that even if an Immigration Judge would so find and then order Lu deported, the result would be the same as if he fled to China to avoid the penalties of his crime.

The Government does have a valid point regarding the continued employment of Lu, given that he lied to his current employer about the reason for his absence from work. The Court agrees with the Government that loss of employment would further weaken his already tenuous ties to the United States. The Government correctly notes that during trial, the evidence established that Defendant's Google searches showed that Defendant researched job opportunities in China; and Defendant's browser history reflected searches of China's economy and comparing the same to that of the United States. The Court agrees with the Government that these searches "give clear indications that Defendant has considered returning to and living in China." (Doc. No. 84, PageID # 848.) Obviously, Lu chose not to return to and live in China after he was discharged from Eaton in

8

October of 2019, but secured a job with a company in Texas. The problem is that at the time of hiring and throughout Lu's employment with this employer, it never knew about the crime with which Lu was charged in April of 2021 and only learned of his conviction when it read news reports following Lu's conviction. The Court believes that if he loses his job, Lu will be hard-pressed to find a job as an IT specialist in the United States given his conviction.

So, while certain factors that the Court must consider in relation to the history and characteristics of Defendant weigh in favor of release, others weigh in favor of detention pending sentencing. However, overall consideration of the factors associated with the history and characteristics of Defendant that the Government points to – along with the nature and circumstances of the offense and weight of the evidence, leads this Court to conclude that Defendant has not met his burden to demonstrate by clear and convincing evidence that he does not pose a risk of flight.

Finally, the Government's argument that the "exceptional reasons" standards described in 18 U.S.C. § 3145(c) does not apply to this case because Lu was detained under § 3143(a)(1), not (a)(2) or (b)(2) and therefore Lu cannot seek relief thereunder is well-taken, as is the Government's argument that he should not be released to assist appellate counsel because 18 U.S.C. § 3143(b) applies only to a defendant who has filed an appeal, which Lu has not done. The Government aptly argues that "Defendant has not sufficiently explained why he needs to meet regularly with as-yet-unretained appellate counsel in person to review as-yet-unordered transcripts[8] in preparation for an appeal that will not likely be filed until after Defendant is sentenced." (Doc. No. 84, PageID # 850.)

---

[8] The Court notes that after the filing of the Government's Response on March 14, 2025, and specifically on March 17, 2025, Defendant's counsel filed a Non-Appeal Transcript Order requesting an expedited (7-day) transcript of the trial proceedings. (Doc. No. 86.)

9

Accordingly, and for all of the reasons stated herein, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date: March 18, 2025

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE